UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEIA MASON, for | ) | CASE NO. 1:09CV1149 |
| S.W.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | **MEMORANDUM OPINION** |
| OF SOCIAL SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Leia Mason ("Plaintiff"), acting on behalf of S.E., a minor ("Claimant"), seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying Claimant's Supplemental Security Income ("SSI") claim. ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") erred in: (1) finding that Claimant did not have marked limitations in the domains of "attending and completing tasks" and "health and physical well-being" and (2) not giving any weight to the opinions of Claimant's treating medical providers. ECF Dkt. #15. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case for further factfinding, analysis, and articulation by the ALJ:

## I. **PROCEDURAL HISTORY**

On September 16, 2005, Plaintiff, acting on behalf of Claimant, protectively filed an application for SSI, alleging disability beginning August 23, 2005 due to attention deficit hyperactivity disorder (ADHD), depression, hallucinations, a learning disability, borderline intellectual functioning (BIF), and obsessive compulsive disorder (OCD). Tr. at 87-89, 94. The application was denied initially and on reconsideration. *Id*. at 78, 84. Plaintiff filed a request for

---

[1] *See* L.R. 8.1(a)(2).

a hearing by an ALJ.  *Id*. at 77.

On August 22, 2008, an ALJ conducted an administrative hearing, where Plaintiff and Claimant were represented by counsel.  Tr. at 450.  At the hearing, the ALJ received testimony from Claimant, Plaintiff, and medical expert Dr. Kathleen O'Brien, M.D.  *Id*.  On September 5, 2008, the ALJ issued a Notice of Decision - Unfavorable.  Tr. at 14-24.  On March 25, 2009, the Appeals Council denied Plaintiff's request for review.  *Id*. at 4.

On May 19, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  On November 14, 2009, Plaintiff filed a brief on the merits.  ECF Dkt. #15.  On January 14, 2010, Defendant filed a brief on the merits.  ECF Dkt. #17.  Plaintiff filed no reply.

## II.  **STEPS TO DETERMINING ELIGIBILITY FOR SOCIAL SECURITY BENEFITS FOR A CHILD**

In order to receive SSI benefits, Claimant must show that she has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  20 C.F.R. § 416.906.  An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood disability insurance benefits.  20 C.F.R. § 416.924(a).  The three-step procedure requires the ALJ to determine whether a child: (1) is performing substantial gainful activity; (2) has a "severe" impairment or combination of impairments; and (3) whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to a listed impairment.  *Id*.

In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment.  20 C.F.R. § 416.925 (d)(emphasis added).  In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment.  20 C.F.R. § 416.926(a)(emphasis added).  In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one

domain. 20 C.F.R. § 416.926a(a)(emphasis added). The SSA assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by her medications or other treatment. 20 C.F.R. § 416.926a(a)(1)- (3). Further, the SSA considers how a child functions in her activities within six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

## III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## IV. ANALYSIS

The ALJ found that Claimant had the severe impairments of BIF, ADHD, Learning Disorder, and OCD. Tr. at 17. In finding that none of Claimant's severe impairments met, equaled, or functionally equaled a Listing, the ALJ relied upon the findings and conclusions of medical expert

-3-

Dr. O'Brien.  *Id.*  Based upon Dr. O'Brien's opinion, the ALJ found that Claimant had "less than marked" limitations in all of the childhood domains.  The ALJ further found that substantial evidence contradicted treating psychologist Dr. Cunningham's findings of marked limitations in two domains since Dr. O'Brien had access to this information and found less than marked limitations in all domains. Tr. at 17-18.  The ALJ also found that Dr. Cunningham's findings were contradicted by the reports that Claimant was taking Prozac, which was working for her OCD, she had no treatment or medication for her ADHD, reports indicated Claimant was doing well, and she had friends.  *Id*. at 18.  The ALJ further indicated that the record showed that despite her obesity, Claimant engaged in physical activities such as roller skating, which required balance, coordination and physical effort.  *Id.*  The ALJ also indicated that despite her BIF, Claimant played the trumpet, which required a great deal of concentration, the ability to read music, and physical effort, coordination, and dexterity.  *Id.*

Plaintiff first contends that the ALJ erred in finding that Claimant did not have marked limitations in the domains of "attending and completing tasks" and in "health and physical well-being."  ECF Dkt. #15 at 1.  Plaintiff argues that the ALJ's analysis of the domains was very brief, occupying a few short paragraphs of a ten-page decision, with the rest of the pages containing mere recitation of the regulations regarding the domains and a conclusory sentence at the end of each domain finding that Claimant had less than marked limitation in the domain.  *Id*. at 12-13.

The Court agrees that the ALJ's analysis was indeed brief.  Of the ten-page decision, the only portion that is not a mere recitation of law and regulations is one paragraph regarding Plaintiff's filing date for Claimant and the identification of those who appeared at the hearing, and five short paragraphs constituting less than one page in which the ALJ explained his conclusion that Claimant's severe impairments did not meet, equal or functionally equal any Listing in the Listing of Impairments. Tr. at 14, 17-18.  The remaining six pages of the ALJ's decision merely set forth the standards for determining functional equivalence, and set forth the regulations regarding the six domains of function with a conclusory sentence stating that Claimant had less than marked limitations in each of the domains.  *Id*.

-4-

A brief analysis is not in and of itself erroneous.  Here, the ALJ relied upon the  opinions of Dr. O'Brien, the medical expert, in finding that Claimant had less than marked limitations in each of the domains. Tr. at 17.  The ALJ also stated that he did not give controlling weight to the July 2008 opinion of Dr. Cunningham, Claimant's treating psychologist, who had found that Claimant was markedly limited in the domains of "acquiring and using information" and "attending and completing tasks." *Id.* at 17-18.  As support for his finding, the ALJ explained that Dr. Cunningham had earlier found in June 2007 that Claimant had marked limitations in "acquiring and using information" and "health and physical well-being" without any explanation.  *Id.*  The ALJ further stated that Dr. O'Brien had access to all of the evidence in the case and substantial evidence contradicted Dr. Cunningham's opinion because medication was working for Claimant's OCD, Claimant received no treatment or medication for her ADHD, and she engaged in physical activities like roller skating and playing the trumpet despite her BIF.  *Id*. at 18.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the

specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.  Unless the ALJ's failure to abide to these procedural requirements amounts to harmless error, the error is cause for remanding the case.  *Carroll v. Astrue*, No. 1:09-CV-1232, 2010 WL 2643420, at *5 (N.D. Ohio July 1, 2010).  The Sixth Circuit has explained that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.*, quoting *Rogers*, 486 F.3d 234, 243 (6th Cir. 2007).

In this case, the ALJ indicated that he was crediting Dr. O'Brien's testimony and opinions and offers reasons for adopting her testimony and opinions.  Tr. at 17.  While it is true that a medical expert's testimony that is consistent with the evidence of record constitutes substantial evidence to support the ALJ's decision, *Atterberry v. Secretary of Health and Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989), the ALJ cannot disregard the treating physician rule and the procedural requirements accompanying the rule when doing so.  The ALJ further cited evidence of record in support of his finding.  Tr. at 17-18.

-6-

However, the ALJ failed to articulate the weight, if any, that he afforded Dr. Cunningham's June 2007 or July 2008 opinions. Tr. at 18. As Social Security Ruling (SSR) 96-2p provides: "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and adopted by the adjudicator." Even when the ALJ believes that the treating physician's opinion is inconsistent with other evidence, "a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Friend v. Comm'r of Soc. Sec.*, 2010 WL 1725066, at *8 (6th Cir. Apr. 28, 2010), citing *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 408 (6th Cir. 2009). The ALJ did not follow this procedural requirement in the instant case.

Moreover, the ALJ fails to even mention the opinions of Claimant's treating psychiatrist, Dr. Don Howe, who indicated that Claimant had a marked limitation in "attending and completing tasks," moderate limitations in "interacting and relating with others" and "caring for self", and an extreme limitation in "health and physical well-being" when Claimant was not taking her medications. Tr. at 320-321. "A failure to follow the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Friend*, 2010 WL 1725066, at 8, quoting *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 546 (a reviewing court "cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record of the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely").

In addition, the ALJ and the medical expert concentrated upon the fact that Claimant's impairments improved with medication, which began occurring in 2006, but they failed to address earlier reports and opinions regarding the degrees of limitation in the domains, especially considering the durational requirement of twelve months or more for finding disability[2] and

---

[2]The Court makes no determination as to whether Claimant meets this durational requirement but merely points out that the ALJ and medical expert appear to base their determinations primarily on recent evidence of record.

Claimant's filing date for SSI dated back to September 16, 2005.  20 C.F.R. §416.905(a).  For example, the ALJ noted that he considered Plaintiff's testimony of Claimant's serious episodes of picking her skin, but it was "contradicted by the current medical report." Tr. at 18.  Dr. O'Brien also testified in reference to Dr. Cunningham's findings of marked limitations that "I'm going by the provider saying that she's [Claimant] made significant progress and it's not a problem anymore." *Id.* at 469.  She further testified in reference to Claimant that "...she's responded very well to treatment and she's doing less of it [picking her skin on her arms] and it seems to be an improved condition, an improved medical condition."  *Id*. at 470-471. However, neither the ALJ nor the medical expert discuss earlier reports about Claimant's intense behavior in picking her face and skin or the indications that Claimant still picks at her arm.  *See* Tr. at 287, 332, 339-340, 474.  Nor does the ALJ address whether Claimant's other impairments, such as OCD, ADHD or BIF met, equaled or functionally equaled a Listing during the relevant time period, as opposed to discussing only the most recent examinations and results.  And the ALJ fails to address the fact that Claimant receives special accommodations at school for her impairments and the impact of these accommodations upon the domains, a subject approached by Claimant's attorney with the medical expert at the hearing, with unclear results.  Tr. at 163-168, 206-281, 291-293, 332, 353, 395-421.

The Court also calls attention to the medical expert's vague testimony regarding a narrative which accompanied Claimant's scores on the Behavior Assessment System for Children (BASC) and their significance.  Tr. at 471.  Claimant's attorney asked Dr. O'Brien about results from the BASC conducted October 31, 2005 by school psychologist Mary Lou Fasko, with additional reports by Claimant's teachers. *Id*. at 217.  The BASC showed "Very Significant" scores in "Atypicality" and "Internalization," and "Significant" scores in "Learning Problems," "Withdrawal," "Depression," "Somatization," and "Behavior Symptom Index."  *Id.*  Dr. O'Brien admitted that the deviations in "Atypicality," "Internalization," and "Somatization" were significant, but she explained that she did not know how the test was administered, whether by self-reporting or other methods.  *Id*. at 472.  Dr. O'Brien indicated that she relied upon the narrative accompanying the

results of the BASC in finding that Claimant "definitely has limitations, they are just not marked limitations." *Id.* Dr. O'Brien read from the following from the narrative:

> she has average behaviors and adaptive skills. She can be polite, she can compliment others and is creative. She has other behaviors that they describe as more intense. They talk about her being shy and having difficulty with groups and having a short attention span. Weak academic skills. Sees things that are not there. I don't know where that comes from because that's nowhere in the psychiatric record. Picks on arms and forehead. Her behaviors impact her ability to learn. She requires increased supervision and support to remain on task and specialized interventions to reduce anxiety. Again, I think that's consistent with my testimony that she definitely has limitations, they just are not marked limitations.

*Id.* at 472. The narrative did state that to which Dr. O'Brien testified. *Id.* at 217. However, the narrative stated that Claimant picks at her arms and forehead "until they bleed." *Id.* It further states that Claimant has some behaviors "which are more intense that[sic] typically developing student[sic] her age." *Id*. It also states that Claimant "makes careless errors," "throws tantrums," and "has difficulty when routines are changed." *Id*. And contrary to Dr. O'Brien's testimony, the psychiatric record does indicate that Claimant saw things that were not there. On October 31, 2005, Dr. Howe evaluated Claimant and indicated in his evaluation that Claimant had a "sudden severe onset " of "seeing bugs" two years ago. *Id*. at 332. He noted that when the medication that Claimant was on stopped, she stopped seeing the bugs, but she continued to "feel crawling on her skin." *Id.* Dr. Andre Prochoroff, a Pediatric Fellow for Dr. Manikum Moodley, evaluated Claimant on December 20, 2004 and also reported that Claimant had continued to pick at her skin and continued to complain of "bugs crawling" on her as she had complained since one year ago, one month after she began taking Adderall. *Id*. at 383. Regardless, Dr. O'Brien fails to explain why she came to the conclusion that Claimant's limitations were not marked based upon the narrative accompanying the BASC. To the extent that the ALJ relied upon Dr. O'Brien's conclusions which resulted from review of this assessment and narrative, the ALJ lacked substantial evidence in which to do so.

For the foregoing reasons, the Court concludes that the ALJ failed to follow the treating physician rule with regard to Drs. Cunningham and Howe, and failed to address earlier evidence of Claimant's impairments and explain whether her impairments met, equaled or functionally equaled the Listings, such as medical reports and findings, teacher reports, school psychologist reports and evaluations.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant matter for further factfinding, analysis, and articulation by the ALJ in accordance with this Memorandum Opinion & Order.

IT IS SO ORDERED.


DATE: August 11, 2010                              */s/George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE